# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Kalemate Muhammad and Love Teaching Tennis, NFP, | ) Case No. 06 C 0308 ) ) |
| Plaintiffs | ) The Honorable David H. Coar ) ) Magistrate Judge Martin C. Ashman |
| v. | ) ) |
| Chicago Park District, | ) ) |
| Defendant. | ) **JURY TRIAL DEMANDED** ) ) |

**VERIFIED FIRST AMENDED COMPLAINT FOR
RACE AND RELIGIOUS DISCRIMINATION, SLANDER, AND
TORTIOUS INTERFERENCE WITH BUSINESS AND CONTRACTUAL RELATIONS**

Plaintiffs Mr. Kalemate Muhammad and Love Teaching Tennis, NFP, by their attorneys, hereby file their Verified First Amended Complaint For Race And Religious Discrimination, Slander, And Tortious Interference With Business And Contractual Relations against the Chicago Park District and its agents and alleges as follows:

## NATURE OF THIS ACTION

1. Mr. Kalemate Muhammad has been teaching tennis to disadvantaged youth on the south side of Chicago for many years, individually and through his company, Love Teaching Tennis, NFP. He teaches free and low-cost tennis clinics at Chicago Park District facilities through programs sponsored by the United States Professional Tennis Association and other tennis industry groups. In the past, the Chicago Park District and its agents have refused to let

Mr. Muhammad and his group use the public tennis courts, in some cases, in front of actual and potential customers.

2. In June 2005, the Chicago Park District hired Mr. Muhammad to teach tennis lessons. The Chicago Park District, through its agents, harassed, reprimanded, and ultimately fired Mr. Muhammad allegedly for actions that other non-African-American, Muslim employees also engaged in and, for which, they were not fired.

3. After the Chicago Park District fired Mr. Muhammad, it, through its agents, on information and belief, discussed Mr. Muhammad with third parties making false and defamatory statements to these third parties.

4. The Chicago Park District and its agents also interfered with Mr. Muhammad's and Love Teaching Tennis's business relationships and contractual relationships by confronting Mr. Muhammad during lessons with customers, refusing to allow him to use the public tennis courts, and removing and destroying Mr. Muhammad's advertisements.

## **THE PARTIES**

5. Mr. Muhammad is an African-American, Muslim male and a citizen of the United States. He regularly attends a mosque on the south side of Chicago, Illinois in the Jackson Park community where he lives.

6. Mr. Muhammad has been a certified member of the United States Professional Tennis Association for many years. He has taught numerous tennis programs to youths in his community.

7. In 2003, Mr. Muhammad created Love Teaching Tennis to teach tennis to disadvantaged youth. On April 7, 2004, Love Teaching Tennis incorporated as a not-for-profit named Love Teaching Tennis, NFP.

8.      The Chicago Park District is the former employer of Mr. Muhammad and is a governmental body with its principal place of business in Chicago, Illinois.

**FACTS**

9.      For the last few years, Mr. Muhammad and Love Teaching Tennis have been working with disadvantaged youths to encourage these youths to participate in the sport of tennis. Mr. Muhammad and Love Teaching Tennis have given numerous free or low-cost tennis lessons to disadvantaged youths through United States Professional Tennis Association and Tennis Industry Association programs. Additionally, Mr. Muhammad and Love Teaching Tennis have mentored other youth to encourage them to become tennis coaches. Mr. Muhammad has been recognized by others in the Chicago tennis community as having worked diligently to introduce tennis to youths in various communities.

10.     Over the years, Mr. Muhammad has noticed that many of the parks in disadvantaged neighborhoods have inadequate tennis courts. Many of these courts are in a state of disrepair, making them more difficult to use for tennis programs and lessons. At the same time, Mr. Muhammad has noticed that tennis courts in more affluent neighborhoods are in much better shape. Mr. Muhammad has brought these inequities to the attention of the Chicago Park District and complained of the disparate treatment, including at a community meeting where Chicago Park District officials were present.

11.     The agents of the Chicago Park District on numerous occasions in 2004 and 2005 denied Mr. Muhammad permits to teach tennis lessons through Love Teaching Tennis. They did not give a valid reason for refusing Mr. Muhammad and Love Teaching Tennis access to the Chicago Parks Department's tennis courts.

12. The Chicago Park District and its agents interfered with the contractual relationship between the Plaintiffs and their customers.

13. In June or July 2004, Plaintiffs were providing services to customers by teaching a tennis lesson to two youths while their mother observed. Defendant's agent, William Tillis, saw that Mr. Muhammad was engaged in a tennis lesson when he approached Mr. Muhammad and his customers.

14. Defendant's agent intentionally and falsely told the customers that Mr. Muhammad improperly appropriated and used Defendant's property. Plaintiffs' customer immediately thereafter terminated the lesson, and never again used their services.

15. The Chicago Park District's interference with the contractual relationship between Plaintiffs and their customers has caused the Plaintiffs damage.

16. In June 2005, Mr. Muhammad applied for a job and was hired by the Chicago Park District to be a summer tennis coach, giving children tennis lessons.

17. When hired by the Chicago Park District, Mr. Muhammad was told he would be assigned to work in a park in his own community, namely Jackson Park. Instead, the Chicago Park District assigned Mr. Muhammad to a park far from his community and in a high-crime, high-risk neighborhood.

18. While working, the Chicago Park District's agents reprimanded Mr. Muhammad for not wearing a Chicago Parks Department t-shirt.

19. The Chicago Park District did not give Mr. Muhammad enough equipment to give the children their tennis lessons, so he supplemented the equipment given to him by the Chicago Park District with thousands of dollars of his own equipment, including tennis racquets, tennis balls, and a battery-operated ball machine.

20. On July 8, 2005, without warning, the Chicago Park District, through its agents, fired Mr. Muhammad.

21. Immediately thereafter, Defendant's agents confiscated some of Mr. Muhammad's tennis equipment. Mr. Muhammad had to call the police to regain his tennis equipment.

22. The Chicago Park District treated Mr. Muhammad less favorably because of his race and religion than other similarly situated employees who are not African-American or Muslim.

23. Mr. Muhammad was fired for reasons based on his race and religion.

24. Mr. Muhammad was qualified to be retained as a summer tennis coach.

25. Mr. Muhammad has complied with all administrative prerequisites by filing timely charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"), attached hereto as Exhibit 1. The EEOC issued to Mr. Muhammad a Notice of Right to Sue, attached hereto as Exhibit 2.

26. The Chicago Park District denied Mr. Muhammad access to its public tennis courts.

27. After July 8, 2005, Defendant's agents, including David Kennedy, falsely told a third party, including at least, Ms. Nicole Masani, that Mr. Muhammad improperly appropriated and used Defendant's equipment and property for financial gain.

28. Mr. Muhammad did not improperly appropriate or use Defendant's equipment for financial gain. Nor did Mr. Muhammad improperly appropriate or use Defendant's property for financial gain.

29. Mr. Muhammad has suffered damage to his reputation and livelihood based on Defendant's agents' statements. Additionally, Love Teaching Tennis suffered damages as a result of the damage to Mr. Muhammad's reputation.

30. The Chicago Park District is aware of Mr. Muhammad and Love Teaching Tennis and its programs.

31. The Chicago Park District's agents, including Megan McDonald, interfered with Mr. Muhammad's and Love Teaching Tennis's business by intentionally removing flyers of programs, and removing and discarding banners.

32. The Chicago Park District's agents, including Megan McDonald and Alonzo Williams have continued to prevent Mr. Muhammad and Love Teaching Tennis from doing business at Defendant's public tennis courts.

33. The Chicago Park District's interference with Mr. Muhammad and Love Teaching Tennis has caused damage to their business.

## NATURE OF CLAIMS

34. This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, for race and religious discrimination and 42 U.S.C. § 1981, as amended, for race discrimination.

35. This is an action brought under 28 U.S.C. § 1339 for common law theories of recovery: slander, tortious interference with business relationships, and tortious interference with contractual relations.

## JURISDICTION AND VENUE

36. This Court has jurisdiction to hear this action pursuant to Title VII of the Civil Rights Act, as amended, and under 28 U.S.C. §§ 1331, 1343, and 1367.

37. Venue is proper for the United States District Court for the Northern District of Illinois because many of the acts complained of arose in this judicial district pursuant to 28 U.S.C. § 1391.

38. Venue is also proper for the United States District Court for the Northern District of Illinois because both the Plaintiffs and Defendant reside in this district pursuant to 28 U.S.C. § 1391.

**COUNT I – RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e *et seq*.**

39. Mr. Muhammad alleges and incorporates herein paragraphs 1 through 38 as paragraphs 1 through 38 of Count I.

40. The Chicago Park District is an employer within the meaning of § 701(b) of Title VII of the Civil Rights Act, as amended.

41. The Chicago Park District discriminated against Mr. Muhammad in the terms and conditions of his job and fired him on account of his race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

42. Mr. Muhammad has suffered financial damage and damage to his reputation as a result of the Chicago Park District's unlawful acts.

**COUNT II – RELIGIOUS DISCRIMINATION IN VIOLATION OF 42 U.S.C § 2000e *et seq*.**

43. Mr. Muhammad alleges and incorporates herein paragraphs 1 through 38 as paragraphs 1 through 38 of Count II.

44. The Chicago Park District is an employer within the meaning of § 701(b) of Title VII of the Civil Rights Act, as amended.

45. The Chicago Park District discriminated against Mr. Muhammad in the terms and conditions of his job and fired him on account of his religion, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

46. Mr. Muhammad has suffered financial damage and damage to his reputation as a result of the Chicago Park District's unlawful acts.

## COUNT III – RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981.

47. Mr. Muhammad alleges and incorporates herein paragraphs 1 through 42 as paragraphs 1 through 42 of Count III.

48. The Chicago Park District discriminated against Mr. Muhammad in the terms and conditions of his job and fired him on account of his race, in violation of 42 U.S.C. § 1981.

49. Mr. Muhammad has suffered financial damage and damage to his reputation as a result of the Chicago Park District's unlawful acts.

## COUNT IV – SLANDER

50. Mr. Muhammad and Love Teaching Tennis allege and incorporate herein paragraphs 1 through 38 as paragraphs 1 through 38 of Count III.

51. On information and belief, the Chicago Park District's agents, in their capacity as agents of Defendant made false statements about Mr. Muhammad to third parties about the circumstances surrounding his termination.

52. On information and belief, the Chicago Park District's agents, in their capacity as agents of the Chicago Park District made false statements about Mr. Muhammad and Love Teaching Tennis to third parties about Mr. Muhammad and Love Teaching Tennis.

53. These statements made by the Chicago Park District's agents were not privileged and were obviously harmful to Mr. Muhammad's and Love Teaching Tennis's reputation.

54. These statements by the Chicago Park District's agents impute a want of integrity in Mr. Muhammad and, therefore, Love Teaching Tennis's performance of their livelihood.

55. These statements by the Chicago Park District's agents caused Mr. Muhammad and Love Teaching Tennis injury.

## COUNT V - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

56. Mr. Muhammad and Love Teaching Tennis allege and incorporate herein paragraphs 1 through 38 as paragraphs 1 through 38 of Count V.

57. Mr. Muhammad and Love Teaching Tennis had a reasonable expectancy of a valid business relationship with third party customers.

58. The Chicago Park District knew of Mr. Muhammad's and Love Teaching Tennis's prospective business relationship and intentionally interfered with that business relationship.

59. Due to the Chicago Park District's intentional interference with Mr. Muhammad's and Love Teaching Tennis's prospective business relationship, the prospective relationship never materialized.

60. This interference by the Chicago Park District caused damage to Mr. Muhammad and Love Teaching Tennis.

## COUNT VI - TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

61. Mr. Muhammad and Love Teaching Tennis allege and incorporate herein paragraphs 1 through 38 as paragraphs 1 through 38 of Count VI.

62. A valid contract existed between Mr. Muhammad and Love Teaching Tennis and a third party.

9

63. The Chicago Park District knew of the valid contract between Mr. Muhammad and Love Teaching Tennis and the third party.

64. On information and belief, the Chicago Park District intentionally and maliciously induced a breach of the valid contract.

65. Due to the Chicago Park District's wrongful conduct, the third party breached the valid contract.

66. This interference by the Chicago Park District caused damage to Mr. Muhammad and Love Teaching Tennis.

**WHEREFORE**, Plaintiffs respectfully requests that the Court:

    A. Find for Mr. Muhammad and Love Teaching Tennis on all claims herein;

    B. Issue injunctive relief to assure that the unlawful conduct alleged herein will not occur in the future;

    C. Award Mr. Muhammad and Love Teaching Tennis compensatory damages, including prejudgment interest;

    D. Reinstate Mr. Muhammad to his Position as a summer tennis coach; and

    E. Allow Mr. Muhammad and Love Teaching Tennis to teach tennis lessons on the Chicago Park District tennis courts.

    F. Award attorney's fees and costs;

    G. Order such other relief as is just and appropriate.

DATED: May 3, 2006

                    Respectfully submitted,


                    By: _____/s/Karen J. Nelson_____
                    Michelle A.H. Francis (ID. No. 6255943)
                    Karen J. Nelson (ID No. 6272781)

                    **Kirkland & Ellis LLP**
                    200 East Randolph Drive
                    Chicago, Illinois 60601
                    Tel: 312-861-2000
                    Fax: 312-861-2200

                    **Attorneys for Plaintiff.**

11

## VERIFICATION OF COMPLAINT

I, Kalemate Muhammad, of full age, certifies as follows:

1. I am the Plaintiff in this matter and have personal knowledge of the facts contained herein.

2. I am the founder, owner, and authorized agent for Love Teaching Tennis, NFP.

3. I have reviewed the Verified First Amended Complaint For Race And Religious Discrimination, Slander, And Tortious Interference With Business And Contractual Relations and state that the factual allegations contained therein are true and correct. As to those allegations stated on information and belief, I believe the same to be true.

4. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct

Dated May 3, 2006.    By: _____
                          Kalemate Muhammad


Sworn to before me this

3rd day of May, 2006.


_____
Notary Public

"OFFICIAL SEAL"
Susan B. Pavlik
Notary Public, State of Illinois
My Commission Expires Feb. 16, 2009