**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KALEMATE MUHAMMAD, </br>and </br>LOVE TEACHING TENNIS, NFP, </br> </br>Plaintiffs, </br> </br>v. </br> </br>CHICAGO PARK DISTRICT, </br> </br>Defendant. | No. 06 C 0308 </br> </br>HONORABLE DAVID H. COAR |

## MEMORANDUM OPINION AND ORDER

Kalemate Muhammad ("Muhammad") and Love Teaching Tennis, NFP (collective, "Plaintiffs") are suing Muhammad's former employer, the Chicago Park District ("Defendant") for racial and religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); racial discrimination under 42 U.S.C. §1981 ("Section 1981"); slander; and tortious interference with business relationships and contractual relations in six separate counts. Before this Court is Defendant's awkwardly titled "Motion to Decline Supplemental Jurisdiction Over or To Dismiss All of Counts IV, V, and VI and to Dismiss Parts of Counts I, II and III." Defendant makes its motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated in the opinion below, Defendant's motion is **DENIED** in part and **GRANTED** in part.

I.  BACKGROUND[1]

Muhammad is an African-American Muslim man who resides in the Jackson Park neighborhood on the south side of Chicago, Illinois. Muhammad has been a certified member of the United States Professional Tennis Association for many years. He has taught numerous tennis programs to young people in his community. In 2003, Muhammad created the entity "Love Teaching Tennis" as a vehicle to teach tennis to disadvantaged youth. On April 7, 2004, Muhammad incorporated Love Teaching Tennis as a not-for-profit corporation named "Love Teaching Tennis, NFP."

Over the years, Muhammad has complained to the Chicago Park District officials that he has noticed disparate treatment of tennis courts in disadvantaged neighborhoods and tennis courts in more affluent neighborhoods. In his view, many of the parks in disadvantaged neighborhoods have inadequate tennis courts in states of disrepair, while the tennis courts in more affluent neighborhoods are in much better condition.

Defendant denied Muhammad permits to teach tennis lessons through Love Teaching Tennis on numerous occasions throughout 2004 and 2005. Defendant also has denied Muhammad access to Defendant's tennis courts without providing any valid reasons. On some occasions Defendant, through its agents, has interfered with the contractual relationship between Plaintiffs and their customers. On one such occasion in June or July 2004, Plaintiffs were providing services to customers by teaching a tennis lesson to two youths while their mother observed. Defendant's agent, William Tillis, saw that Muhammad was engaged in a tennis

---

[1] The following facts are taken from Plaintiffs' verified amended complaint and are assumed to be true for purposes of this motion.

lesson when he approached Muhammad and his customers. Tillis told the customers that Muhammad had improperly appropriated and used Defendant's property. The customer immediately terminated the lesson, and never again used Plaintiffs' services. Defendant's interference with the contractual relationship between Plaintiffs and their customers has caused the Plaintiffs damage.

Nevertheless, in June 2005, Muhammad was hired by Defendant as a summer tennis coach, providing tennis lessons to children. Muhammad was told at the time of hiring that he would be assigned to work in a park in his own community, namely Jackson Park. However, Defendant assigned Muhammad to a park far from his community and in a high-crime, high-risk neighborhood.

Muhammad complains of his working conditions in addition to the location to which he was assigned. At some point Defendant reprimanded Muhammad for not wearing a Chicago Park Department t-shirt while working. Muhammad has forced to spend his own money on equipment. Muhammad determined that Defendant has not provided enough equipment to adequately teach tennis lessons to the children so he purchased thousands of dollars of his own equipment, including tennis racquets, tennis balls, and a battery-operated ball machine, to provide lessons to the children.

On July 8, 2005, Defendant fired Muhammad without warning. Immediately thereafter, Defendant's agents confiscated some of Muhammad's tennis equipment. Muhammad was forced to call the police to regain his tennis equipment.

Muhammad asserts that Defendant mistreated him because of his race and religion in comparison to similarly situated employees who are not African-American or Muslim. He

asserts that he was terminated because of his race and religion.  He asserts that he was qualified to be retained as a summer tennis coach.  He asserts that he has complied with all administrative prerequisites by filing timely charges of discrimination with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued Muhammad a Notice of Right to Sue.

Defendant has denied Muhammad access to its public tennis courts.  On or about July 8, 2005, Defendant's agents, including David Kennedy, told a third party, including Ms. Nicole Masani, that Muhammad improperly appropriated and used Defendant's equipment and property for financial gain.  Muhammad did not improperly appropriate or use Defendant's equipment or property for financial gain. Muhammad alleges that he has suffered damage to his reputation and livelihood based on Defendant's agents' false statements.  Additionally, Love Teaching Tennis suffered damages as a result of the damage to Muhammad's reputation.

Defendant has interfered with Plaintiffs' business by intentionally removing flyers of programs, and removing and discarding banners.  Defendant continues to prevent Plaintiffs from doing business at Defendant's public tennis courts.  Defendant's conduct has caused damage to Plaintiffs' business.

Plaintiffs' original complaint was filed on January 19, 2006.  This Court appointed counsel for Plaintiffs and allowed them to submit an amended complaint.  Plaintiffs filed a verified amended compliant on May 3, 2006.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  *See Transit Exp.*

*Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *Kontos v. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). When a party moves for dismissal under Rule 12(b)(1), the nonmoving party must provide competent proof of jurisdictional facts to support its allegations. *Thomason v. Gaskill*, 315 U.S. 442, 446 (1942); *Kontos*, 826 F.2d at 576.

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court again accepts all well-pleaded allegations in the plaintiff's complaint as true. Fed. R. Civ. P. 12(b)(6). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed "unless it appears beyond all doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### III. ANALYSIS

#### A. Discrimination in the Terms and Conditions of Employment

Defendants argue that Muhammad has included charges in his complaint that go beyond the scope of the original EEOC charge of discrimination. In Count I, Muhammad has alleged that in violation of Title VII, Defendant harassed him on the basis of race in the terms and conditions of his employment and terminated him on the basis of race. (Verified Amended Complaint, ¶¶1-42.) In Count II, Muhammad alleged the same harassment and termination as a result of religious discrimination. (Verified Amended Complaint, ¶¶ 1-46). On August 9, 2005, Muhammad filed a charge of racial and religious discrimination against Defendant with the

EEOC. (*Id.*) In the charge, Defendant claims the Muhammad claimed only that he was "discharged" on July 7, 2005; he did not claim that he was racially harassed in the terms and conditions of employment before his termination. He further claimed that the earliest date of discrimination was July 7, 2005 and that the latest date of discrimination was July 7, 2005.

Defendant contends that "an aggrieved employee cannot complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for a different type of discrimination." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985). Defendant's argument amounts to asserting an affirmative defense of estoppel- that Muhammad is estopped from asserting harassment for his reprimand and park assignment because the "claims about racial harassment in the terms and conditions of his employment are different from his charge of racial discrimination in termination."

As an initial matter, in *Babrocky v*, the Seventh Circuit explained that "the requirement that the scope of the EEOC charge limit[s] the scope of the subsequent complaint is in the nature of a condition precedent with which litigants must comply rather than constituting a component of subject matter jurisdiction." *Id*. Therefore, this Court declines to analyze Defendant's motion under the standard of review of a Rule 12(b)(1) motion. This Court must examine the EEOC charge in order to rule on this aspect of the motion. A copy of any written instrument which is an exhibit to a complaint is considered to be a part of the pleadings. Fed. R. Civ. P. 10(c);

*Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005). Furthermore, documents that a defendant attaches to a motion to dismiss may be considered only if they are referred to in the plaintiff's complaint and are central to plaintiff's claim. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661-62 (7th Cir. 2002). Thus, this court may properly view

the EEOC charge without converting this motion to dismiss to a motion for summary judgment. *See id.*

Plaintiffs respond that while asserting his *pro se* EEOC charge, Muhammad did assert claims regarding both the discrimination in the terms and conditions of his employment as well as his termination. They point to Muhammad's EEOC Charge Questionnaire, which alleged "false termination, lying, and discrimination." Muhammad also mentioned the allegedly discriminatory incidents that occurred during his employment, which were receiving complaints of failure to wear the Chicago Park District t-shirt, failure to be respectful and polite and alleged unauthorized use of Defendant's property. In the section asking the complainant to explain why the action taken against him was discriminatory Muhammad described his placement in a park far from his home.

"A Title VII Plaintiff may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (citations omitted). The purpose of this requirement is to give the EEOC and employer a fair opportunity to resolve the dispute and also to give the employer fair notice of the conduct about which the employee is complaining. *Id*. "Claims are reasonably related if there is a factual relationship between them...At a minimum, this means that the EEOC charge and the complaint must describe the same conduct and implicate the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (citation omitted). This Court finds that the allegations of Plaintiffs' verified amended complaint satisfy the reasonable relation exception to the general rule of inclusion.

First, Muhammad filed his EEOC charge and filled out the questionnaire without the benefit of an attorney. Muhammad is a tennis instructor, not a lawyer, so the lack of personal experience and technical knowledge demands a degree of flexibility in reading the EEOC charge. Second, Muhammad's claims of discrimination in the terms and conditions of his employment are reasonably related to the claims surrounding his termination. In his EEOC charge, Muhammad alleged "false termination, lying, and discrimination." He also mentioned the during his employment, he received reprimands for failure to wear the Chicago Park District t-shirt while working, failure to be respectful and polite and alleged unauthorized use of Defendant's property. In explaining why the action taken against him was discriminatory the Muhammad described his placement in a park far from his home while a White male who lived far away was placed in the park in his community. A fair reading of the charge leaves the reader with notice that Muhammad thought Defendant discriminated against him based on his race and religion when they reprimanded him, placed him at a distant park and terminated him.

These circumstances are not like the circumstances of *Kirk v. Federal Property Management Corporation*, where the Seventh Circuit found no reasonable relation between the claims of the EEOC charge and the plaintiff's complaint. 22 F.3d 135 (1994). In *Kirk*, the plaintiff complained to the EEOC that his employer discriminated against him when it failed to promote him and terminated him. *Id*. at 139. Later, the plaintiff included in his complaint to the district court a claim that his employer discriminated against him when it failed to provide him with educational opportunities it had made available to two White employees. *Id.* In *Kirk*, there was no reasonable relation between the plaintiff's termination and promotion denial on the one

hand, and the denial of educational opportunities on the other hand because the claims grew out of separate facts.

The issue in this case is much more similar to the issue before the Court in *Ezell*. 400 F.3d 1041. There, the Court allowed a hostile work environment claim to precede when only a claim of unlawful termination was clear from the EEOC charge. *Id*. at 1046-47. While the plaintiff in *Ezell* mentioned particularities of the discriminatory action as he discussed his termination, he also complained generally that his supervisor made discriminatory comments to him and treated him disrespectfully. *Id*. He also stated he was uncomfortable working in that environment. *Id*. The Court held that those EEOC charges could suggest a hostile environment claim or could simply be evidence of his supervisor's discriminatory intent in terminating him.

Here, Muhammad charged that he was subjected to false termination and discrimination. His discussion of his placement in a distant park could have merely been his attempt to demonstrate discriminatory intent. Whatever the case may be, the Court in *Ezell* focused on the fact that the EEOC charge and the later claim for hostile environment describe the same conduct and the same individuals. 400 F.3d at 1047. Here, it is evident that the Muhammad's EEOC charge and his later claim with this Court describe the same conduct and the same individuals as well. Therefore, this Court finds that Muhammad is not barred from asserting discrimination in the terms and conditions of his employment.

### B. Material Adverse Employment Action

To establish a prima facie case under Title VII and 42 U.S.C. § 1981 (as well as under many other employment discrimination statutes), a plaintiff must allege that he experienced some adverse employment action. Defendant contends that the adverse employment actions

alleged by Muhammad are legally insufficient to amount to a "materially adverse employment action" and should be dismissed pursuant to Rule 12(b)(6). Defendant argues that job assignment locations and reprimands are not adverse employment action. It is worth mentioning that every Seventh Circuit case to which the Defendant cited for an example of what constitutes a legally insufficient adverse employment action was an appeal from a summary judgment decision. That is because a district court will not generally inquire into the substance of the alleged adverse employment action on a motion to dismiss pursuant to Rule 12(b)(6).

Federal Rule of Civil Procedure 8 states in relevant part that "[a] pleading... shall contain... a short and plain statement of the claim showing that the pleader is entitled to relief...." In *Kolupa v. Roselle Park District*, the Seventh Circuit clarified that all a plaintiff need plead to survive a Rule 12(b)(6) motion is that his employer subjected him to a concrete injury based upon a legally impermissible motive. 483 F.3d 713, 714 (2006). The Court went on to explain how mere warnings can constitute adverse employment actions. *Id.* at 715. There is little conceptual difference between a warning and a reprimand. Furthermore, although Defendant cited *Herrnreiter v. Chicago Housing Authority*, it apparently did not read all of the categories of adverse employment actions outlined by that Court. 315 F.3d 742 (7th Cir. 2002). If it had it would have undoubtedly noticed that an "adverse employment action" can encompass job assignment location. *Id*. at 744.

In sum, a claim that satisfies Rule 8 will rarely be subject to dismissal for failure to state a claim upon which relief can be granted. Since Muhammad has alleged in his claims that his former employer subjected him to concrete harm on the basis of his race and religion, this Court will not dismiss those claims pursuant to Rule 12(b)(6).

## C. Supplemental Jurisdiction

Defendant argues that this Court should not exercise supplemental jurisdiction over Plaintiffs' state law claims because they are not so closely related to his federal employment discrimination claims that they are part of the same case or controversy, as required under 28 U.S.C. §1367(a). Plaintiffs allege slander and tortious interference with business relationships and contractual relations in addition to Muhammad's federal claims. Title 28 U.S.C. §1367(a) states in relevant part:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

First, Plaintiffs allege that Defendant slandered them. Specifically they allege that Defendant's agents, in their capacities as agents of the Defendant, made false statements about Muhammad to third parties about the circumstances surrounding his termination and false statements about Plaintiffs to third parties about Muhammad and Love Teaching Tennis. Muhammad alleges that these statements were not privileged and were harmful to Plaintiffs' reputations. Second, Plaintiffs allege that they had a reasonable expectancy of a valid business relationship with third party customers and that Defendant knew of their prospective business relationships and intentionally interfered with those business relationships. Plaintiffs allege further that Defendant's interference damaged them. Lastly, Plaintiffs also allege that a valid contract existed between them and third party customers and that Defendant knew of the valid

contract and intentionally and maliciously induced a breach of the valid contract. Plaintiffs allege further that the customer did breach the contract and such breach caused them damages.

In a very relevant case, the Seventh Circuit stated that "judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of operative facts." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995). Supplemental jurisdiction is not limited to "restatements of the same ground for recovery. The claims need only revolve around a central fact pattern." *Euromarket Designs v. Crate & Barrel*, 96 F.Supp.2d 824 (N.D.Ill. 2000) (quoting *White v. County of Newbury, S.C.*, 985 F.2d 168, 172 (4th Cir. 1993)).

Contrary to Defendant's assertions, supplemental claims need not directly relate to the federal claims, they need only derive from a common nucleus of operative facts. Based upon the limited information contained in the claims of Plaintiffs' verified amended complaint, it does not appear that the same central fact pattern applies to both the federal claims and the state claims.

Muhammad alleges he worked for Defendant in June and July of 2005. Yet he alleges the Defendant denied him permits to teach tennis lessons through Love Teaching Tennis on numerous occasions throughout 2004 and 2005. As an example of tortious interference with contractual relations, Plaintiffs cite to an example that occurred in 2004. Furthermore, Plaintiffs admit in their response memorandum that "the claims for tortious interference with a business relationship and tortious interference with a contractual relationship arise from conduct that occurred both before and after Mr. Muhammad's employment." Similarly, the facts that give

rise to slander claim are more central to the facts surrounding the tortious interference claims than the facts surrounding Muhammad's employment. Therefore, this Court declines to exercise jurisdiction over Plaintiffs' supplemental claims.

### D. Merits of the Supplemental Claims

Having determined that Plaintiffs' state law claims are not properly before this Court due to the different facts that gave rise to them and the federal discrimination claims, there is no need to determine whether those claims are legally sufficient to survive a Rule12(b)(6) challenge.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Decline Supplemental Jurisdiction Over or To Dismiss All of Counts IV, V, and VI and to Dismiss Parts of Counts I, II and III is **DENIED** in part and **GRANTED** in part. Defendant's motion to dismiss Muhammad's claims of discrimination as they relate to the terms and conditions of his employment is **DENIED**. Defendant's motion for this Court to decline supplemental jurisdiction over Plaintiffs' state law claims is **GRANTED**.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **March 30, 2007**